UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RICHARD MAXIMUS STRAHAN                      )
                                             )
              *Plaintiff*                    )
                                             )     Civil Action No.
v.                                           )
                                             )     _____
ADMINISTRATOR, NATIONAL OCEANOGRAPHIC        )
AND ATMOSPHERIC AGENCY ("NOAA")              )
                                             )
ASSISTANT ADMINISTRATOR, NATIONAL MARINE )        27 February 2018
FISHERIES SERVICE ("NMFS")                   )
                                             )
SECRETARY ,MASSACHUSETTS OFFICE OF ENERGY )
AND ENVIRONMENTAL AFFAIRS ("MEOEA")          )
                                             )
DIRECTOR, MASSACHUSETTS DIVISION             )
OF MARINE FISHERIES ("MDMF")                 )
                                             )
COMMISSIONERS, ATLANTIC MARINE FISHERIES )
 COMMISSION ("AFC"))                         )
                                             )
MASSACHUSETTS LOBSTERMAN'S ASSOCIATION )
AS REPRESENTING ALL IT'S MEMBERS ("MLA")     )
                                             )
              *Defendants*                   )

VERIFIED COMPLAINT FOR DECLARATORY , INJUNCTIVE,
AND OTHER RELIEF AND A REQUEST FOR A JURY TRIAL

I the Plaintiff — Richard Maximus Strahan — SPEAK:

1.      Plaintiff Strahan is a conservation scientist petitioning the Court to enforce the
"take prohibitions" imposed by the Endangered Species Act against all of the Defendants to stop
their killing and injuring of species of whales and sea turtles listed as protected species under the
Endangered Species Act. These species includes the Northern Right Whales and other

Case 1:18-cv-10392-DJC   Document 1   Filed 02/28/18   Page 2 of 21

26 February 2018 Complaint: Strahan v. NOAA et al. (D. Mass 2018)

endangered species of whales **FN1.** This also includes Green Turtles and other endangered species of Sea Turtles. **FN2** The Government Defendants are killing and/or injuring Endangered Whales and Sea Turtles incidental to their permitting and regulating the deployment of pot fishing gear ("Pot Gear") and gill net fishing gear ("Gill Nets") in marine waters within the United Sates ECZ off its northeast coastline. The Defendants Massachusetts Lobstermen Association and its members have been taking Endangered Whales and Sea Turtles incidental to their commercial fishing operations off the Massachusetts coast. All these Defendants have historically done so since Congress' adoption of the ESA in 1973.

2.      Commercial fisheries operation using Pot Gear and Gill Nets employing vertical buoy lines that routinely entangle endangered whales and sea turtles in US coastal waters. US coastal waters constitute the essential marine habitat for Endangered Sea Turtles and Whales. As a result Endangered Whales and Sea Turtles are routinely killed or seriously injured by their being entangled by lobster/crab Pot Gear and in Gill Nets. In the case of a critically endangered species like the Northern Right Whale, a single killing once a year from anthropogenic activity can precipitate an irreversible population decline and the extinction of this endangered species.

3.      It is established law that the Government Defendants are liable for the violation of the ESA's Section 9 prohibition on taking listed endangered species when any of the fishing gear that they permit and regulate actually entangles an Endangered whale or Sea Turtle. **FN3** It is incontrovertible that the Government Defendants current and past licensing and regulating Pot Gear and Gill Net fisheries routinely causes the killing and injuring of ESA listed endangered species of whales and sea turtles. It is also indisputable that the Government Defendants in doing so are violating the ESA Section 9 take prohibitions by unlawfully talking

---

[1] The Endangered Whales includes: (1) The Sei Whale, *Balaenoptera borealis*; (2) The Northern Right Whale, *Eubalaena glacialis*: (3) The Humpback Whale *Megaptera novaeangliae*; (4) The Fin Whale *Balaenoptera physalus*: and (5) The Blue Whale, *Balaenoptera musculus*.

[2] The Endangered Sea Turtles include: (1) The Green turtle, *Chelonia mydas*,; (2) Loggerhead turtle, *Caretta caretta*,; (3) The  Olive Ridley turtle, *Lepidochelys olivacea*; (4) The Hawksbill turtle,  *Eretmochelys imbricate*; (5) The Kemp's Ridley turtkle, *Lepidochelys kempii*; and (6) The Leatherback turtle,  *Dermochelys coriacea*.

[3] See *Strahan v. Coxe*, 939 F. Supp. 963 (Dist. Mass. 1996) and 127 F. 3d 155 (1st Circuit, 1997) (Massachusetts marine fishing agency liable under ESA Section 9(a) for unlawful taking of ESA listed species of endangered whales by entanglements of endangered whales in fishing gear licensed and regulated this agency).

Case 1:18-cv-10392-DJC   Document 1   Filed 02/28/18   Page 3 of 21

26 February 2018 Complaint: Strahan v. NOAA et al. (D. Mass 2018)

endangered species of whales and sea turtles. The Court has little or no discretion but to enjoin the Government Defendants from authorizing any further deployment of Pot Gear and Nets into US coastal waters until they stop permitting Pot Gear and Gill Nets that cause the incidental taking of listed species of whales and sea turtles that is prohibited by ESA Section 9.

4.      The Government Defendants are Administrators of Government agencies that license and regulate commercial fishing operations along the US marine coastline — NOAA, NMFS, AFC, MEOEA, and MDMF. The other Defendants are individuals that directly conduct commercial fishing operations along the US coastline that are being sued as their voluntary association — the Defendant MLA. These Defendants have a long history of violating the ESA starting at its beginning in 1973 when the ESA was enacted by Congress. During the following decades the Defendants have deliberately refusing to comply with the ESA Section 9 take prohibitions and attempted to evade them in law and practice.

5.      The Court must cross the line now and take full responsibility for enforcing the ESA against the Defendants to reasonably insure a significant reduction in — if not stopping — the number of annual violations of the ESA's Section 9 takings of Endangered Whales and Sea Turtles by these Defendants. The survival of the Northern Right Whales depends on the Court's willingness to immediately and ruthlessly enforce the ESA against the Defendants.

6.      The main problem facing the Court in relying on any federal fishing agency to supervise and enforce the ESA Section 9 prohibitions against the Defendants is facially obvious. The Defendants NOAA and NMFS are literally "the foxes guarding the chicken coup" in regards to Endangered Whales and Sea Turtles being unlawfully entangled in fishing gear. The Defendant NOAA was assigned the responsibility by Congress to enforce the ESA Section 9 take prohibitions against its violators. Instead NOAA is one of the worst violators of the ESA Section 9 prohibitions in the US. As a result, NOAA has decided that its personal vested interests in promoting commercial fishing are best served by categorically failing to adequately enforce the ESA Section 9 take prohibitions against any party especially those associated with commercial fishing.

7.      It was a major misstep by Congress to designate NOAA as the agency assigned to supervise the compliance of the ESA for other federal agencies and itself. NOAA violated its mandatory non-discretionary duty under ESA Section 7 by failing to do an internal ESA Section 7(a) consultation on its assigning its ESA enforcement responsibility to one of its infra-agencies.

Case 1:18-cv-10392-DJC   Document 1   Filed 02/28/18   Page 4 of 21

26 February 2018 Complaint: Strahan v. NOAA et al. (D. Mass 2018)

Instead it simply handed its ESA enforcement responsibility over to Defendant NMFS. which is NOAA's one infra-agency with a conflicting vested interest against enforcing the ESA Section 9 prohibitions against commercial fishing operations. In fact, NMFS is the #1 violator of the ESA Section 9 prohibitions against taking Endangered Whales and Sea Turtles in regards to commercial fishing. By statute, NMFS only promotes the commercial profiteering by a small group of vested interests in commercially exploiting Ocean wildlife. It is no small wonder that the ESA Section 9 take prohibitions have never been enforced by NMFS against even a single commercial fishermen since 1973.

9.      Fortunately there is a legal way out of this nightmare scenario. Only the Defendant NOAA was assigned by Congress management responsibility for ESA listed marine species. NOAA's decision to hand the survival of Endangered Whales and Sea Turtles over to a commercial fishing agency like NMFS was idiotic. It was also an unacceptable conflict of interests It is effectively and predictably dooming these endangered species to extinction. The Plaintiff is asking for a declaratory judgment against NOAA that it violated its ESA Section 7 mandatory duty by failing to do an internal ESA Section 7 consultation over its choice of an infra-agency to assign its statutory imposed duties under the ESA.

10.     The Plaintiff is asking the Court for a permanent injunction requiring NOAA to reconsider its choice of an infra agency to assign its management responsibilities for the ESA listed marine species of wildlife. The Plaintiff seeks as part of that order a requirement that it make its decision to choose a new infra agency pursuant to the ESA Section 7 consultation requirement. In this manner NOAA will be forced to consider the long history of NMFS complete incompetence and ineffectiveness in protecting ESA listed endangered species from its own commercial fishing activities and those of coastal state governments. The record is clear that NMFS is a "private government agency" serving only commercial fishing interests ability to profit from harvesting marine wildlife  and not the Public interests in conserving endangered species of marine wildlife and Ocean ecosystems . Employees of the commercial fishing industry rule NMFS as their private fiefdom and exclusively are appointed to its advisory management councils. NMFS considers the conservation of endangered whales and sea turtles as a categorical

**26 February 2018 Complaint: Strahan v. NOAA et al. (D. Mass 2018)**

threat to its own vested interests — the interests of the commercial fishing industry profiting off Ocean resources even if they destroy them by their profiteering. **FN4**

11.     The prohibited taking by the Defendants are caused by nothing more than the deployment of the offending fixed fishing gear in the marine habitat occupied by Endangered Whales and Sea Turtles. Endangered Whales and Sea Turtles become entangled in the offending fixed fishing gear simply from their bumping into it. Endangered Sea Turtles also misidentify the plastic floats used on Pot Gear and Gill Nets as food and then get entangled in the fishing gear.

12.     The Plaintiff is asking for a declaratory judgment that the Defendants incidental taking of Endangered Whales and Sea Turtles in fishing gear violates the ESA Section 9(a) prohibitions against taking ESA listed species of wildlife. The Plaintiff is seeking a permanent injunction enjoining the Government Defendants from permitting and licensing the deployment of any commercial fishing gear that has not been scientifically determined to be Whale Safe and that does not entangle marine wildlife pursuant to its deployment in the marine environment. The Plaintiff also seeks an order requiring the Government Defendant to under ESA Section 7 review of its regulation and licensing of commercial fisheries so that it no longer kills and injured Endangered Whales and Sea Turtles.

13.     The Plaintiff is seeking a Jury Trial against each of the Defendants on both his request for a declaratory judgment and on his request for injunctive relief.

### The Parties

14.     Plaintiff Richard Maximus Strahan recently graduated magnum cum laude with a Bachelor of Arts degree in Classics Studies from the University of Massachusetts in Boston MA. He is also the Chief Science Officer of Whale Safe USA, a campaign to make the US coastline environmentally safe for endangered species of coastal whales and sea turtles. His business mailing address is P. O. Box 382408, Cambridge MA 02238.

15.     Defendant Administrator and the National Oceanographic and Atmospheric Agency is being sued in its official capacity as a violator of the ESA Section 9 prohibitions on taking and for violating its mandatory and non-discretionary duties under ESA Section 7. Its

---

[4] The National Ocean Service that administers the National Marine Sanctuaries program is the ideal choice for NOAA to make in assigning its ESA Section 7 and 9 enforcement duties. The NOS engages in no commercial activities and its normal operations offer no conflicts if assigned the duty of enforcing the ESA Section 9 prohibitions against commercial fishing operations.

Case 1:18-cv-10392-DJC   Document 1   Filed 02/28/18   Page 6 of 21

**26 February 2018 Complaint: Strahan v. NOAA et al. (D. Mass 2018)**

official business address is 1401 Constitution Avenue NW, Room 5128
Washington, DC 20230.

16.    Defendant Assistant Administrator and the National Marine Fisheries Service is
being sued in its official capacity as a violator of the ESA Section 9 prohibitions on taking and
for violating its mandatory and non-discretionary duties under ESA Section 7. Its official
business address is 1401 Constitution Avenue NW, Room 5128
Washington, DC 20230.

17.    Defendant Secretary and the Massachusetts Executive Office of Energy and
Environmental Affairs is being sued in its official capacity as a violator of the ESA Section 9
prohibitions on taking ESA listed species. Its official business address is 100 Cambridge Street,
Suite 900, Boston, MA 02114.

18.    Defendant Director and the Massachusetts Division of Marine Fisheries are being
sued in its official capacity as a violator of the ESA Section 9 prohibitions on taking ESA listed
species. The Director of the MDMF official business address is 251 Causeway Street, Suite 400,
Boston, MA 02114.

19.    Defendant Commissioners and the Atlantic States Marine Fisheries Commission
are sued in their official capacity as directors of the ASMFC. The Commissioners business
address is 1050 N. Highland Street, Suite 200 A-N, Arlington, VA 22201

20.    Defendant Massachusetts Lobstermen's Association Inc. and its members are
being sued as violators of the ESA Section 9 prohibitions on taking ESA listed species. The
MLA'S official business address is 8 Otis Place Scituate, MA 02066-1323.

### Jurisdiction and Standing

21.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal
question) under the ESA, APA, 5 U.S.C. § 701 et seq. (APA), 28 U.S.C. § 1361 (mandamus) and
may issue a declaratory judgment and further relief pursuant to 28 U.S.C. § 2201, 2202
(declaratory and injunctive relief). An actual, justiciable controversy now exists between
Plaintiff and Defendants, and the requested relief is proper under 28 U.S.C. §§ 2201-2202, 5
U.S.C. §§ 701–706, and 16 U.S.C. § 1540(g)

22.    Venue in this judicial district is proper under 28 U.S.C. § 1391(e) because this is
an action against an agency of the United States and officers of the United States acting in their
official capacity. Additionally at least one plaintiff resides in this district.

Case 1:18-cv-10392-DJC   Document 1   Filed 02/28/18   Page 7 of 21

26 February 2018 Complaint: Strahan v. NOAA et al. (D. Mass 2018)

23.     The Plaintiff has Article III standing pursuant to his living in the habitats of many listed endangered species and his professional work as a conservation scientist whose job is to stop the 6th Wave of Extinction. Pursuant to 16 U.S.C. § 1540(g), Plaintiffs provided the DHS, FWS, and NMFS with notice of its said ESA violations on 6 September 2017, more than 60 days prior to the commencement of this case.

**The Regulatory Scheme for the Protection of Endangered Species of Plants and Animals**

24.     In enacting the ESA, Congress recognized that certain species "have been so depleted in numbers that they are in danger of or threatened with extinction" and that these species are "of esthetic, ecological, educational, historical, recreational, and scientific value to the Nation and its people." 16 U.S.C. § 1531(a)(2), (3).

25.     The ESA protects imperiled species by listing them as "endangered" or "threatened." A species is "endangered" if it "is in danger of extinction throughout all or a significant portion of its range." Id. § 1532(6). A species is "threatened" if it "is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." Id. § 1532(20). The Secretary of Commerce is charged with administering and enforcing the ESA for most marine species, including North Atlantic right whales, and has delegated this responsibility to NMFS. 50 C.F.R. § 402.01(b).

26.     The ESA seeks "to provide a means whereby the ecosystems upon which endangered and threatened species depend may be conserved, [and] to provide a program for the conservation of such . . . species." 16 U.S.C. § 1531(b). The ESA defines conservation as "the use of all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to [the ESA] are no longer necessary." Id. § 1532(3). Accordingly, the ultimate goal of the ESA is not only to prevent listed species from going extinct, but also to recover these species to the point where they no longer require ESA protection.

Case 1:18-cv-10392-DJC Document 1 Filed 02/28/18 Page 8 of 21

26 February 2018 Complaint: Strahan v. NOAA et al. (D. Mass 2018)

27.     To accomplish these goals, Section 9 of the ESA generally makes it unlawful for "any person" to "take" an endangered species. Id. § 1538(a)(1). A "person" includes private parties as well as local, state, and federal agencies. Id. § 1532(13). "Take" is defined broadly under the ESA to include harassing, harming, wounding, killing, or capturing a protected species (or attempting to engage in such conduct), either directly or by degrading its habitat enough to impair essential behavior patterns. Id. § 1532(19); 50 C.F.R. § 222.102. The ESA prohibits the acts of parties directly causing a take as well as the acts of third parties, such as governmental agencies, whose acts cause such taking to occur. 16 U.S.C. § 1538(g).

28.     Additionally, Section 7(a)(2) of the ESA requires federal agencies to "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any" endangered or threatened species. Id. § 1536(a)(2).

29.     To comply with Section 7(a)(2)'s substantive mandate, federal agencies must consult with NMFS when their actions "may affect" a listed marine species. 16 U.S.C. § 1536(a)(2). NMFS and the action agency must utilize the "best scientific and commercial data available" during the consultation process. Id.; 50 C.F.R. § 402.14(a).

30.     Where, as here, NMFS is the action agency as well as the expert consulting agency, NMFS must undertake intra-agency consultation. At the completion of consultation, the consulting branch of NMFS issues a biological opinion that describes the expected impact of the agency action on listed species. 16 U.S.C. § 1536(b); 50 C.F.R. § 402.14.

31.     The biological opinion must include a summary of the information upon which the opinion is based, an evaluation of "the current status of the listed species," the "effects of the action," and the "cumulative effects." 50 C.F.R. § 402.14(g)(2), (g)(3).

32.     "Effects of the action" include both direct and indirect effects of an action "that will be added to the environmental baseline." Id. § 402.02. The "environmental baseline" includes "the past and present impacts of all Federal, State or private actions and other human activities in the action area, the anticipated impacts of all proposed Federal projects in the action area that have already undergone formal or early section 7 consultation, and the impact of State or private actions which are contemporaneous with the consultation in process." Id. "Cumulative effects" include "future State or private activities, not involving Federal activities, that are reasonably certain to occur within the action area." Id.

Case 1:18-cv-10392-DJC  Document 1  Filed 02/28/18  Page 9 of 21

**26 February 2018 Complaint: Strahan v. NOAA et al. (D. Mass 2018)**

33. Thus, in issuing a biological opinion, NMFS must consider not just the isolated share of responsibility for impacts to the species traceable to the activity that is the subject of the biological opinion, but also the effects of that action when added to all other activities and influences that affect the status of that species.

34. After NMFS has added the direct and indirect effects of the action to the environmental baseline and cumulative effects, it must make its determination of "whether the action is likely to jeopardize the continued existence of a listed species." 16 U.S.C. § 1536(b)(3), (b)(4); 50 C.F.R. § 402.14(h). A likelihood of jeopardy is found when "an action [] reasonably would be expected, directly or indirectly, to reduce appreciably the likelihood of both the survival and recovery of a listed species in the wild by reducing the reproduction, numbers, or distribution of that species." 50 C.F.R. § 402.02. Recovery is defined as "improvement in the status of listed species to the point at which listing is no longer appropriate." Id.

35. A biological opinion that concludes that the agency action is not likely to jeopardize the continued existence of a listed species but will result in take incidental to the agency action must include an incidental take statement. 16 U.S.C. § 1536(b)(4).

36. The incidental take statement must specify the amount or extent of incidental taking on such listed species, "reasonable and prudent measures" that NMFS considers necessary or appropriate to minimize such impact, and set forth "terms and conditions" that must be complied with by the action agency to implement the reasonable and prudent measures. Id.; 50 C.F.R. § 402.14(i). Additionally, when the listed species to be incidentally taken are marine mammals, the take must first be authorized by NMFS pursuant to the MMPA, and the incidental take statement must include any additional measures necessary to comply with the MMPA take authorization. Id.

37. The take of a listed species in compliance with the terms of a valid incidental take statement is not prohibited under Section 9 of the ESA. 16 U.S.C. § 1536(b)(4), (o)(2); 50 C.F.R. § 402.14(i)(5).

38. If NMFS determines in its biological opinion that the action is likely to jeopardize the continued existence of a listed species, the biological opinion must include "reasonable and prudent alternatives" to the action that will avoid jeopardy. 16 U.S.C. § 1536(b)(3)(A); 50 C.F.R. § 402.14(h)(3).

Case 1:18-cv-10392-DJC   Document 1   Filed 02/28/18   Page 10 of 21

26 February 2018 Complaint: Strahan v. NOAA et al. (D. Mass 2018)

39.     Regardless of the conclusion reached in the biological opinion, the agency undertaking the federal action has an independent duty to ensure that its actions are not likely to jeopardize the continued existence of listed species. 16 U.S.C. § 1536(a)(2). An agency's reliance on a legally flawed biological opinion to authorize an action does not satisfy its substantive duty to ensure against jeopardy.

40.     Moreover, the ESA's implementing regulations further require an agency to reinitiate Section 7 consultation when: (a) the amount of take specified in the incidental take statement is exceeded; (b) new information reveals that the action may have effects not previously considered; (c) the action is modified in a way that was not previously considered; or (d) a new species is listed or critical habitat designated that may be affected by the identified action. 50 C.F.R. § 402.16.

41.     The ESA specifies that Section 7 consultation must typically be completed within ninety days after initiation. 16 U.S.C. § 1536(b)(1); 50 C.F.R. § 402.14(e). The substantive duty to ensure against jeopardy of listed species remains in effect regardless of the status of the consultation

### The Administrative Procedure Act

42.     The APA governs judicial review of federal agency actions. 5 U.S.C. §§ 701–706.

43.     Under the APA, courts "shall . . . hold unlawful and set aside agency action, findings, or conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or made "without observance of procedure required by law." Id. § 706(2)(A), (C), (D).

Case 1:18-cv-10392-DJC  Document 1  Filed 02/28/18  Page 11 of 21

26 February 2018 Complaint: Strahan v. NOAA et al. (D. Mass 2018)

## Background on Examples of ESA Listed Endangered Species of Whales and Sea Turtles that are Adversely Affected by Commercial Fishing

### *Northern Right Whale*

44.     The Northern Right Whale is the world's most critically endangered large whale species and also one of the world's most endangered mammals. Northern Right Whale's essential marine habitat is within the 200 mile ECZ of mostly the US but extends northwards into Canada. They live in the "urban sea" of the United States. Their coastal marine habitat is no longer marine wilderness from having so hugely been adversely impact from commercial development of area within 100 miles inland of the US coast that spills outward to the Ocean. The Northern Right Whale living along the US coastline is more akin to a moose trying to live in a suburb of an eastern city like Boston or Concord NH. Not a good situation.

45.     Right whales migrate annually from their summer feeding grounds off the Northeast coast of the United States to their winter breeding grounds off the Southeast coast. Females typically reach sexually majority at age nine or ten and give birth to a single calf. The gestation period lasts roughly one year. From 2005 to 2014, the average right whale calving interval (i.e. the amount of time between the birth of a right whale calf and a subsequent calf from the same mother) ranged from three to five years. The average right whale calving interval has increased every year since 2014, to a high of 10 years in 2017.

46.     Right whales have raised patches of roughened skin on their heads, known as callosities. These callosities are found only on right whales and, like human fingerprints, have distinctive patterns that enable scientists to individually identify right whales. The callosities are covered by barnacles and tiny crustaceans known as whale lice. The barnacles and whale lice NMFS amended the Atlantic Large Whale Take Reduction Plan in 2015, but did so to exempt certain waters from the requirements of the 2014 rule. 80 Fed. Reg. 30,367 (May 28, 2015). make the callosities appear white or pale yellow and thus visible from boats or during aerial surveys. Scientists maintain an extensive catalogue that documents each of the North Atlantic right whales known to exist.

47.     Although the North Atlantic right whale has been protected under the ESA since 1973, the species has not recovered to a sustainable population level. Scientists estimate that the species consisted of only 458 individuals as of 2016.

Case 1:18-cv-10392-DJC  Document 1  Filed 02/28/18  Page 12 of 21

**26 February 2018 Complaint: Strahan v. NOAA et al. (D. Mass 2018)**

65. NMFS has previously stated that the species' survival is dependent on protecting every individual, concluding that the loss of even one whale may contribute to the extinction of the species.

48.     Entanglement in commercial fishing gear and ship strikes are the two primary threats to the North Atlantic right whale's recovery.

49.     To reduce the threat of ship strikes, NMFS issued regulations in 2008 and 2013 requiring ships 65 feet in length and longer to slow to ten knots or less in important right whale habitat areas at certain times of year. 73 Fed. Reg. 60,173 (Oct. 10, 2008); 78 Fed. Reg. 73,726 (Dec. 9, 2013). The rule has reduced right whale mortalities from ship strikes.

68. Entanglement in fishing gear has been the primary cause of death and serious injuries of North Atlantic right whales in recent years.

50.     When right whales get tangled up in lobster gear, they can drown immediately. In a significant number of cases, however, the animals die over an extended time period as they become incapacitated by injuries or infections caused by the entanglement or starve. Gear often wraps around whales' flippers, mouths, and tails and, particularly in growing animals, cinches tighter over time. Such injury often results in major tissue and bone damage and systemic infection. The animals often lose weight, causing them to sink when dead so that death from entanglement is often underreported.

51.     From 2010 to 2014, there were 24 records of serious injuries and mortalities of right whales that involved entanglement or fishery interactions – an average of 4.65 whales per year. In 2015, there were at least 4 new confirmed entanglements of right whales in fishing gear; in 2016 there were at least 7 new confirmed right whale entanglements; and in 2017, there were at least 9 new confirmed right whale entanglements.

52.     From 2010 to 2016, entanglement related deaths accounted for 85% of diagnosed right whale mortalities.

53.     In its 2016 stock assessment report, NMFS established an annual right whale PBR of 1. In other words, NMFS has determined that only a single right whale may be killed as a result of human activity while still allowing the species to reach its optimum sustainable population under the Marine Mammal; Protection Act. 16 U.S.C. § 1362(20). Therefore, current documented serious injuries and mortalities are unsustainable and vastly exceed the standards of the MMPA.

Case 1:18-cv-10392-DJC   Document 1   Filed 02/28/18   Page 13 of 21

26 February 2018 Complaint: Strahan v. NOAA et al.  (D. Mass 2018)

54.     Many right whale entanglements and mortalities are undocumented. Documented serious injury and mortality rates may vastly underrepresent actual mortality. Scarring data may better reflect actual entanglement rates. For example, a study of scarification data estimated that between 1980 and 2009, nearly 83% of known right whales suffered entanglements and 59% of right whales have been entangled more than once. A recent follow-up study indicates that the pattern persisted through at least 2012, and there is no evidence to suggest this threat has been mitigated.

55.     In addition to causing serious injuries and mortalities, entanglement in fishing gear causes other significant harm to Endangered Whales and Sea Turtles. . For example, research indicates that survivorship probability for individual North Atlantic right whales is reduced by at least 20% after an entanglement event.

56.     Chronic entanglement impairs foraging and locomotion. Impaired locomotion can contribute to starvation, while an entanglement of the mouth directly impedes foraging, causing starvation. One entangled North Atlantic right whale gradually starved to death over the course of 320 days.

57.     An entanglement can also increase stress hormone levels, which can contribute to the development of systematic infections. Severe wounding from an entanglement or repeated entanglements of right whales can increase their susceptibility to disease.

58.     Entanglements are reducing the reproductive success of right whales, inhibiting the species' ability to recover from the brink of extinction. Studies show that severe wounding and repeated entanglements of right whales can cause reduced reproduction. Studies have also found that female right whales seen alive and carrying gear or with severe wounds from entanglement had a significantly lower chance of calving again. Females that experienced moderate or severe entanglement wounds between calving events had a significantly longer calving interval than females that experienced minor or no entanglement wounds.
79. Other studies have found that significant energetic impacts also occur from entanglements, especially in reproductive females. The drag from fishing gear can delay right whale reproduction by months or years.

Case 1:18-cv-10392-DJC   Document 1   Filed 02/28/18   Page 14 of 21

26 February 2018 Complaint: Strahan v. NOAA et al. (D. Mass 2018)

59.     The myriad negative impacts from entanglements are contributing to the dire status of the right whale population. Just since 2010, calving rates have dropped by nearly 40%, and the last four decades have seen increasing numbers of right whales killed, primarily by entanglement in fishing gear. The right whale population is now in decline.

60.     The declining population trend was evident even before the spring and summer of 2017, during which at least 17 Right whales were found dead in the United States and Canada. Twelve whales were found dead in Canadian waters, and five were found dead in U.S. waters. The cause of death is still being investigated for many of these deaths, but necropsies show that at least two of the whales found dead in Canadian waters appear to have died from entanglement in fishing gear. Two of the whales found dead in U.S. waters show evidence of entanglement. Some of the whales were too decomposed to determine cause of death.

61.     These mortalities, which amount to nearly 4% of the current right whale population, will compound negative impacts to right whales, especially considering that at least four of the dead whales have been identified as females and only five calves were born in 2017.

62.     Conservation scientists assign a high probability that, the species will be biologically incapable of recovery as a species by the end of the next quarter century if current trends continue.

63      All Endangered Whales and Sea Turtles become routinely become entangled in the Pot Gear and Gill Nets licensed and regulated by the Government Defendants. These Endangered Whales and Sea Turtles are then killed and injured as a result. In recent years the incidents of entanglements have increased for Endangered Whales and Sea Turtles. This is because there has been an explosion in the population of Amerikan Lobsters off the US northeastern coast coincident with an increase in the consumer market for lobster. Now more commercial fishermen are deploying more commercial fishing gear due to the greater market demand and the larger lobster population that can meet this demand.

64.     Its important to note that there are more lobsters because their main predator — the Cod fish — was recently wiped out by overfishing. Despite its constantly decreasing population over many years, NOAA/NMFS refused to list the Cod fish under the ESA as an endangered/threatened species. Their failure was a systemic error owing to their singular loyalty to the commercial fishing industry and not to the Public interest or to the rule of law. If the NOAA/NMFS are not ordered to do otherwise, they will continue to ignore the entanglement of

Case 1:18-cv-10392-DJC   Document 1   Filed 02/28/18   Page 15 of 21

**26 February 2018 Complaint: Strahan v. NOAA et al. (D. Mass 2018)**

Endangered Whales and Sea Turtles by the Pot Gear and Gill Nets that they license and regulate till the Northern Right Whale goes extinct. It will be the first and not last species of whale or sea turtle to be extirpated by the negligence and commercial loyalty of NOAA/NMFS — the "foxes guarding the chicken coop."

65.     Because of the extinction of Codfish off the US northeastern coast as a result of its being overfished, the Amerikan Lobster population greatly increased from it no longer being preyed upon by the Codfish. Once its predator was eliminated by overfishing the population of Amerikan lobsters was no longer restrained by predation. It must be noted as a lesson of history that it was the refusal of NOAA/NMFS to list the Codfish as an endangered species that resulted in its remaining population being totally depleted from overfishing leading to its extirpation in the US northeast coastal waters. Despite all the data collected by NMFS clearly showing that the Codfish population was decimated from overfishing and it was facing imminent extinction, NMFS refused to put any moratorium on its further commercial exploitation nor did it list the species as endangered under the ESA. To this day, NMFS' complete dedication to the commercial exploitation by commercial fishing makes it incapable of stopping its licensing the commercial fishing of Cod. This should be a convincing example of why NOAA/NMFS must be ordered by the Court to obey the ESA if there is any possibility of stopping commercial fishing from causing the extinction of any of the Endangered Species of Whales and Sea Turtles.

## Claims Against the Defendants

COUNT I:     *Defendants Violation of 16 USC § 1536(a)(1): The Defendant NOAA/ASMFC/NMFS Failure to Comply with the Mandatory Duties Imposed on It by ESA Section 7(a)(1) to Use Its Authorities Under Law to Insure the Continued Survival of ESA Listed Species of Endangered and Threatened Whales and Sea Turtles. FN5*

66.     The Plaintiff re-alleges his claims of fact and law asserted in paragraphs 1 – 65.

67.     These Defendants have completely refused and failed to comply with their non-discretionary and mandatory duties under ESA Section 7(a)(1) to use their authorities to insure that Endangered Species of Whales and Sea Turtles protected by the ESA will recover from their protected status as depleted species of wildlife and plants. ASMFC has wholly violated ESA Section 7(a)(1) by refusing to consult with NMFS over its commercial fishing operations and other activities adverse impact on Endangered Species of Whales and Sea Turtles. It has failed to use enact such consultations and has not used its lawful authorities to assist in the recover of these ESA protected species from their depleted biological status.

68.     For their part, Defendants NOAA and NMFS have violated their mandatory and non-discretionary duties imposed by ESA section 7(a)(1) on them by wholly refusing to do an internal ESA Section 7 consultation in order to implement a program to effectively use their authorities and responsibilities under ESA Section 7(a)(1) to assist the recovery of Endangered Species of Whales and Sea Turtles. For example, NMFS wholly fails to effectively enforce the ESA Section 9(a) prohibitions against taking Endangered Species of Whales and Sea Turtles against individual commercial fishermen and state governments that license and regulate commercial fishing in federal waters under concurrent state jurisdiction of these states.

69.     These said violations of the Defendants will continue to reoccur daily until the Court orders these Defendants to comply with their mandatory and non-discretionary duties under ESA Section 7(a)(1).

_____

[5] **ESA Section 7(a)(1):** The Secretary [i. e. FWS/NMFS] shall review other programs administered by him and utilize such programs in furtherance of the purposes of this Act. All other Federal agencies shall, in consultation with and with the assistance of the Secretary, utilize their authorities in furtherance of the purposes of this Act by carrying out programs for the conservation of endangered species and threatened species listed pursuant to section 4 of this Act.

COUNT II:    *Defendants Violation of 16 USC § 1536(a)(2): The Defendants NOAA/ASMFC/NMFS' Failure to Engage in a ESA Section 7(a) Consultation to Insure that the Government Defendants Commercial Fishing Operations and Enforcement Practices of ESA Section 9 Prohibitions will Not Jeopardize the Continued Survival of ESA Listed Species of Endangered and Threatened Whales and Sea Turtles. FN6*

70.    The Plaintiff re-alleges his claims of fact and law asserted in paragraphs 1 – 69.

71.    These Defendants are violating the mandatory and non-discretionary duties imposed on them by ESA Section 7(a)(2) concerning the adverse impact on Endangered Whales and Sea Turtles from commercial fishing that NOAA/NMFS licenses and regulates. Since 1973 and continuing to the present, they have failed to adequately comply with their mandatory and non-discretionary duties to meaningfully consult on the adverse impact on Endangered Species of Whales and Sea Turtles of its authorizing and regulating commercial fisheries operations off the US Atlantic coastline using Pot Gear and Gill Nets that has resulted in the continued killing and injuring of these ESA listed species incidental to their entanglement in the said fishing gear.

72.    Defendant NOAA violated its mandatory and non-discretionary duties under ESA Section 7(a)(2) by transferring its ESA management authority assigned it by Congress concerning listed species of marine wildlife to its infra-agency NMFS without first conducting an internal ESA Section 7(a) consultation to insure that such a transfer would not jeopardize the continued survival of Endangered Species of Whales and Sea Turtles. NOAA wholly failed its lawful requirement to consider a more suitable agency to which it would transfer its ESA management responsibility such as the National Ocean Service.

---

[6] **ESA Section 7(a)(2)**: Each Federal agency shall, in consultation with and with the assistance of the Secretary [i. e. FWS/NMS], insure that any action authorized, funded, or carried out by such agency (hereinafter in this section referred to as an "agency action") is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species which is determined by the Secretary, ... In fulfilling the requirements of this paragraph each agency shall use the best scientific and commercial data available.

26 February 2018 Complaint: Strahan v. NOAA et al. (D. Mass 2018)

73.    It was an act of arbitrary and capricious incompetence that NOAA would hand Endangered Species of Whales and Sea Turtles over to the custody to an agency like NMFS whose licensing and regulation of commercial fishing routinely kills and/or injures Endangered Species of Whales and Sea Turtles. The ESA Section 7 required that NOAA first produce a Biological Assessment and then a Biological Opinion before deciding to invoke the said trans od its ESA management authority for Endangered Species of Whales and Sea Turtles.

74.    Since 1973 NMFS has wholly failed in its mandatory and non-discretionary duties under ESA Section 7(a) to enter into an internal consultation over its programs and policies concerning its enforcement of the ESA Section 9 prohibitions against the taking of Endangered Species of Whales and Sea Turtles. As a result of these failures, commercial fishermen now routinely kill and injure members Endangered Species of Whales and Sea Turtles incidental to their commercial fisheries operations without a scintilla of fear that they will be prosecuted by NMFS for these ESA Section 9 prohibited takings of Endangered Species of Whales and Sea Turtles

75.    For their part, Defendants NMFS/NOAA/ASMFC have violated their said mandatory and non-discretionary duties imposed by ESA section 7(a)(2) and they will continue to do so unless compelled to do otherwise by the Court.

26 February 2018 Complaint: Strahan v. NOAA et al. (D. Mass 2018)

COUNT III:    *Defendants Violation of 16 USC § 1538(a): The Defendants Violation of the ESA Section 9(a) Prohibitions Against the Incidental Taking of Endangered Species of Whales and Sea Turtles Occurring as a Direct Result of their Respective Individual Commercial Fishing Operations FN7*

76.    The Plaintiff re-alleges his claims of fact and law asserted in paragraphs 1 – 75.

77.    The Defendants licensing and regulating commercial fishing operation off the Atlantic coastline violates the ESA Section 9 prohibitions of the ESA .

78.    The Defendants acting in concert are all violating in their unique and separate capacities the ESA Section 9(a) prohibitions of taking Endangered Species of Whales and Sea Turtles by their facilitating the operation of commercial fisheries that deploy Pot Gear and Gill Nets in US coastal waters that are killing and/or injuring Endangered Species of Whales and Sea Turtles by their entanglements in the said fishing gear. Endangered Species of Whales and Sea Turtles are killed and injured from entanglement in Pot Gear and Gill Nets deployed by the Defendant MLA members and by the Government Defendants licensing and regulating these commercial fisheries. Federal courts have repeatedly held federal agencies liable for violating the ESA's Section prohibitions when their agency actions expectedly and routinely cause commercial development in ecosystems utilized by ESA listed species and that results in the unlawful taking of these species in violation of the ESA Section 9(a) prohibitions. **FN8**

79.    The Defendants will continue their said ESA Section 9(a) prohibited taking of Endangered Species of Whales and Sea Turtles into the future unless ordered to stop by the Court.

---

[7] **ESA Section 9(a):**[I]t is unlawful for any person subject to the jurisdiction of the United States to— (A) import any such species into, or export any such species from the United States; (B) take any such species within the United States or the territorial sea of the United States; (C) take any such species upon the high seas; (D) possess, sell, deliver, carry, transport, or ship, by any means whatsoever, any such species taken in violation of subparagraphs (B) and (C); … or (G) violate any regulation pertaining to such species or to any threatened species of fish or wildlife listed pursuant to section 4 of this Act and promulgated by the Secretary pursuant to authority provided by this Act.

[8] See *Strahan v. Coxe*, 939 F. Supp. 963 (Dist. Mass. 1996) and 127 F. 3d 155 (1st Circuit, 1997) (Massachusetts marine fishing agency liable under ESA Section 9(a) for unlawful taking of ESA listed species of endangered whales by entanglements of endangered whales in fishing gear licensed and regulated this agency). See also *Florida Key Deer v. Paulison*, 522 F.3d 1133 (11th Cir. 2008) and *Florida Key Deer v. Stickney*, 864 F. Supp. 1222 (Dist. FL 1994) (Federal Emergency Management Agency violates ESA §§ 9 and 7 for its authorizing, regulating, and funding commercial development in habitat of ESA listed endangered deer species).

26 February 2018 Complaint: Strahan v. NOAA et al. (D. Mass 2018)

## PRAYER FOR RELIEF

I.  For a Declaratory Judgment that the Government Defendants are violating their mandatory and non-discretionary duties under ESA Section 7 from their authorizing and regulating commercial fishing operations and other agency action that are killing and/or injuring Endangered Species of Whales and Sea Turtles as jeopardizing their continued survival as listed species under the ESA and also by NMFS refusal to do the said ESA Section 7 consultation over its policies and programs for enforcing the ESA Section 9 prohibitions against commercial fishermen.

II.  For a Declaratory Judgment that the Defendant NOAA is violating its mandatory and non-discretionary duties under ESA Section 7 from transferring its management authority to Defendant NMFS and doing so without conducting the required ESA Section 7 internal consultation to insure that the transfer would not violate the continued survival of Endangered Species of Whales and Sea Turtles and by its arbitrary refusal to consider the transfer to any more suitable infra-agency like the National Ocean Service.

III.  For a Declaratory Judgment that the Defendants are violating the ESA's Section 9(a) prohibitions by incidentally taking members of Endangered Species of Whales and Sea Turtles off the US coast to their respective commercial fishing operations.

IV.  For an order, enjoining the Defendants from engaging in further Lobster Pot and Gill Net commercial fisheries operations that could result in the entanglement of any Endangered Whale and Sea Turtle.

V.  For an order, forcing the Defendants to fully and adequately comply with their mandatory and non-discretionary duties imposed on them by ESA Section 7 in regards licensing and regulating the deployment of Pot Gear and Gill Nets, transferring ESA management authority from NOAA to one of its infra-agency, and over any adopted policy and practice for enforcing the ESA Section 9 prohibitions against individuals incidentally taking Endangered Whales and Sea Turtles from entanglement in their fishing gear.

VI.  For an award of the Plaintiff's direct costs of his prosecution against the Defendants.

VII.  For any further relief that the Court deems appropriate.

BY:

/s/ Richard Maximus Strahan

Richard Maximus Strahan
POB 82
Peterborough NH 03458
esistoo@yahoo.com
617-817-4402

*Pro Se and Proud!*

26 February 2018 Complaint: **Strahan v. NOAA et al.  (D. Mass 2018)**

## VERIFICATION OF THE COMPLAINT

I Richard Maximus Strahan verify under the pains and penalties of perjury that all the facts alleged in the above complaint are known to the best of my ability to be true. Signed under the pains and penalties of perjury this 26th day of February in the year 2018.

/s/ Richard Maximus Strahan